Good morning, Your Honors. Steve Hubachek, Federal Defenders, on behalf of Mr. Downs. Your Honors, the District Court denied the motion for new trial based on three of the Harrington factors, each of which was an abuse of discretion. I'd like to first address the diligence question, but before I proceed to the merits there, I need to correct an error in the briefs. In the briefs, particularly in our briefs, we claimed several times that there was an effort to subpoena Roger Garcia. I went back and checked the application. There wasn't a subpoena offered for him. It was for two other witnesses. So, and I've already told Mr. Green that. So, anyway, that I need to correct. Now, with respect to diligence, the District Court said there was no attempt by the defendant to explain why he was able to discover information months after trial that he wasn't able to discover prior to trial. That's an implausible and illogical finding for two reasons. Number one, the moving papers established that the individual who recruited Mr. Downs to participate in this venture used a false name. And the true identity of him as the individual known as Mr. Terry was not discovered until later on. And, in fact, that's said in the moving papers themselves at ER 86, where Mr. Downs is now able to identify Mr. Terry as the person who recruited him. I'm interested in understanding what the link is between Mr. Terry and the person who dealt with Downs. I think that's the problematic aspect of this, is establishing any sort of link. I understand, Your Honor. And at page 86 of the excerpt of record, there is a statement that now Mr. Downs can identify Hugo Terry as the person who hired him to drive car parts into the United States from Mexico, set him up with a hotel in Tijuana, and gave Mr. Downs the van in which he was arrested. So that's a direct allegation that the individual who recruited Mr. Downs and got him involved in this venture is, in fact, Mr. Terry. So what does that tell us about the offense, about whether he's guilty, not guilty? I mean, what's the link, as Judge Wardlaw says? The link is that this is a classic third-party culpability situation. What we've got is information that Mr. Terry is the person who involved Mr. Downs. Mr. Downs maintains his innocence. They didn't know that there were drugs in the car. That was the defense in both of the first two trials. But how does that make him any less culpable if he can identify, just because he can identify the person who supposedly got him involved, that is just as consistent with guilt as innocence that they were co-conspirators? Well, in fact, the typical defense in cases like this is that individuals claim that someone else was the person who set them up, recruited them, didn't tell them that drugs were in the car. That would have been the defense in this case if the defense had been able to locate this particular witness. But you can make that argument even if you don't know who the person is. You can say that I was recruited by someone whose identity is unknown to me. I can't identify the person, but I was duped. So I don't understand why being able to just give a name without that person giving an affidavit or something connecting them would be exculpatory evidence. Well, I agree with you that you can put on this defense. And he could have gone up and testified that this person, Roger Garcia, who's in the wind, is the person that recruited him. He could have said that. But the question is, does the fact that we have a person that we can subpoena, that we can bring into court, and say this is the guy that recruited me, and not just that this is the guy that recruited me, but that it turns out that he is a drug trafficker as well. And that information was not known until well after the trial, because the arrest of Hugo Terry didn't occur until, I think, a month, a little bit, about a month and a half after Mr. Downs suffered his conviction. Yeah, the problem I have with the proffer is that there is nothing to link this person with the particular event that led to your client's arrest. It's just like he picked somebody out that was arrested for a narcotics offense and labeled that person as the person who brought him into the scheme. It's a little far-fetched in my view. That certainly would be a credibility judgment that a jury would have to resolve. But that's not what the district court relied upon here in denying the motion. With respect to the materiality, he said there just is no link. And to say that there is no link really just doesn't characterize the record correctly. Are we limited to the basis that the district court asserted in denying the motion? Well, as I understand Hinkson, this court is reviewing for abuse of discretion this ruling by this district court. And I think that either the court should be limited to what the district court said here, or if it finds that it wants to consider other things, that it should remand it for the district court in its superior fact-finding mode to make those determinations. But it just isn't. Are we reviewing the ultimate decision for abuse of discretion or the analysis employed by the district court for abuse of discretion? I think you're reviewing the analysis, because Hinkson was very clear that this is effectively a factual determination. And if the district court's facts are wrong, then that is an abuse of discretion. And the district court's factual finding as to materiality is that there is no link or ability to demonstrate a link between Mr. Downs and Mr. Terry. And the allegation at page 86 of the excerpt of record clearly establishes that link. Now, he would have to get over the other hurdles that Your Honor has mentioned with respect to, you know, is this really what happened? Is he really the guy that recruited him? Well, wouldn't he have to show a link before we even say that the district court was abuse of discretion? Wouldn't he have to show a link before we even got there? Right, and I'm claiming that we have shown that. I know you are, and you point to page 86. So how did Downs identify Terry? Did he see him? Did he talk to him? And did we have an affidavit to that effect? That's not in the record. The only thing that I can point to, Your Honor, that's actually in the record is that page 86, lines 25 through 27, where Mr. Downs says that he is able to identify this individual as the person who recruited him. But there is not an affidavit. On page 88 of the excerpt of record, defense counsel certifies that the foregoing pleading is true and accurate. And the defense counsel has alleged here what Mr. Downs would say with respect to Mr. Terry. But I can't point, Your Honors, to anything other than that with respect to his ability to establish this link. But it is there. So the third factor is that the judge relied on, as has already been mentioned, is Downs has not shown that the identity of Terry in a new trial would probably result in defendant's acquittal. And, again, I think that – What is it about this testimony that will probably result in defendant's acquittal? Well, I mean, Your Honor, maybe we're differently situated because I've tried a bunch of these cases. But that's the way that these cases work. Well, I've read – we've seen a number of these cases up here on appeal. Right. Well, that's – I mean, that's what the defense would be. He would go in and he would – So why is it probably, you know, the identity of Terry – why did the district court judge abuse his discretion in making that determination? He abused his discretion for two reasons. Number one, in the previous finding where he said there's no link and no ability to show a link was wrong. So when he was making the determination that it wasn't material, that was going to be informed by his previous error in saying that there was no link. But, in fact, there is a link and the ability to show that link. That's number one. Number two, we have the ability to demonstrate, in fact, that Mr. Terry is, in fact, a drug trafficker. Because we would have been able to prove, based upon the evidence in the complaint and affidavit that resulted in the probable cause finding as to Mr. Terry, that he was, in fact, a drug trafficker. That would be admissible as – But Terry claims the same thing that Mr. Downs does. He claims lack of knowledge, that he thought he was driving car parts. Well, he didn't claim that in his – there wasn't any sort of statement on his part in the probable cause determination. And, subsequently, of course, he's been convicted of that offense. So I don't think that that would be the claim in any new trial. And, as I understand Judge Fletcher's analysis in his dissent, that what you want to look at is what would be the evidence in the new trial. And the evidence in the new trial would be that Mr. Terry was, in fact, guilty of drug trafficking in that particular crime. Right. And would you be, as a practical matter, applying to call Mr. Terry? Yes. He might invoke, but that would be the plan, yes. And Mr. Downs, as well, to testify that Mr. Terry was the person who set him up and offer into evidence. Did Mr. Downs testify in his trial? He did not. He didn't testify in either trial. The first one was a hung jury, and then the second one was the resultant conviction. In support of this motion, did he submit an affidavit laying out his position? He did not, Your Honor. He advised defense counsel, and defense counsel filed the pleading that he certified was true and correct. Your Honors, if I may reserve my 15 seconds for rebuttal. Thank you. Thank you, Your Honors. Good morning, Your Honors. My name is Joseph Green. I represent the United States in this matter. May it please the Court, I'd like to touch on a few of the points that Judge Hayes ruled on. His decision in this case wasn't abuse of discretion at all. It clearly wasn't a mistake. It was absolutely correct. And turning to the first point, it's crystal clear, even more clear today, that Mr. Downs didn't exercise due diligence in trying to locate this individual who supposedly set him up. And that's because if you accept that the counsels proffer that Mr. Downs was working for this guy and crossing a van and moving auto parts to Orange County, there are any number of things that the defense could have done to try to identify him before the trial. They could have sent, you know, they've got a team of investigators that work in federal defenders. They could have sent an investigator to the warehouse, asked for the individual, brought a physical description of the individual. Mr. Downs could have provided the locations of every place where he'd ever known this individual, interviewed any of his friends or colleagues. But they simply failed to do anything other than, if you accept the counsel's representation, other than try to contact him one time on a push-to-talk radio. Notably, the error which Mr. Hubachek points out wasn't just made in the appellate briefs, but, of course, that was also represented to the district court. So when Judge Hayes made the decision, he too had been misinformed that they had done more than they said they did. So there were any number of things that they could have done to identify Mr. Garcia pre-trial, and they simply failed to do them. Now, I think there's a reason probably why they didn't really truly try to track him down, and that is because even if they would be permitted, and this goes to the third part of Judge Hayes' ruling about whether this would result in acquittal, let's suppose that they had found this individual. When Mr. Downs arrives at the port of entry, he tells the inspectors that he had been in Tijuana visiting the mother of his child, he was going to Los Angeles, not Orange County, and that the purpose of his visit was to go get his papers to show that he was a U.S. citizen. Nowhere during the course of his contact with the primary inspectors does he say, I borrowed the car from Garcia, I work for him selling auto parts, and I'm going to a warehouse in Orange County where I've been on repeated occasions. So even assuming that the court had granted a new trial, the government's case gets better. It gets better, not worse, because right out of the gate Mr. Downs has to admit that he lied to the primary inspectors about what he was doing. So it appears to the government that this is more likely a change in the strategy, a Plan B defense, than newly discovered evidence of an existing defense. Could you address opposing counsel's assertion that the district court abused its discretion when it said there was no link between the proffered evidence and the case? Well, I will address it, and I believe that Judge Hayes got it right in so much as there's no link other than the representation by counsel, that claim. So that link, if you want to call that a link, that could have been made by Mr. Downs before trial. But if you drill down to the facts, the only facts that they pointed to to show that these were somehow linked, which was that they were both driving 97 Fords at the San Ysidro Port of Entry in the morning. Now, there are thousands of cars across the San Ysidro Port of Entry. There's no real meaningful facts that link these two whatsoever. Downs never said that he was selling auto parts. Downs didn't, and they haven't represented. Downs didn't have auto parts in his car. Downs didn't have business records tied to this supposed business in Orange County that if he was truly working in the auto part business with this individual, they would have come forward with those facts. So the real evidence, other than Mr. Downs coming in and saying, oh, I've got a new defense, there was not a single piece of evidence that linked these two, and the government's not aware of any. And I'm sure that if Mr. Downs' counsel had anything in mind,  just a couple of other points in terms of that last piece about how it wouldn't have resulted in an acquittal. There were other problems with the evidence in Mr. Downs' defense that he didn't know. He was driving a gas tank that had about 30 packages of marijuana in it. So the packages took up so much of the gas tank that when they drained what was left of the gas, the agent approximated that it had about three gallons of gas. It would have only had room for a little bit more. Now, again, if Mr. Downs had presented this defense the first time, it clearly would have been shot down by the jury as well because it's completely impossible that Mr. Downs, as an unknowing dupe, can make it to Orange County with a gas tank that's full of marijuana and not gas. So the government's position is that Judge Hayes didn't abuse his discretion at all, that he got it exactly right, that they didn't exercise due diligence. There's no link between Mr. Hugo's case and Mr. Downs, and that even if he would have allowed this, it wouldn't have resulted in an acquittal. It probably would have made his case worse. Quickly on the sentencing, the government also believes that Judge Hayes didn't abuse his discretion. As I understand their argument, it's principally that Judge Hayes, you know, erroneously and singly relied on the deterrence issue in sentencing Mr. Downs, and that just is misleading in terms of the record. Judge Hayes' discussion of the sentencing factors is set forth in the excerpt of the record from pages 19 to 25. He considered a range of factors. Deterrence was just one of them. He actually really does the opposite of what the bad marriage judge does. He talks about Downs' prior conviction. He says, it was a serious conviction, but I recognize that he only got six months. I recognize that he only got six months in that sentence. And then instead of departing upward or giving an upward adjustment, Judge Hayes took time off of the guidelines and sentenced him to 32 months. And in light of the seriousness of the offense, Mr. Downs' history and characteristics and all the other factors that Judge Hayes considered, the 32-month sentence was reasonable in this case. I'm happy to submit it at this point unless you have any additional questions. No, thank you. Thank you. With respect to the first point, in the district court, there wasn't a claim that Garcia was attempted to be subpoenaed. That was just a mistake in the appellate level, not in the district court. And then finally, with respect to materiality, this case did hang the first time. So all these facts about what he said at the border and the fact that the drugs were in the ñ some of the drugs were in the gas tank wasn't enough to get a conviction the first time it was tried, wouldn't be the second time either or third time. Thank you, Your Honors. Thank you very much, Counsel. USB Downs is submitted, and we'll take up USB Newhouse.
judges: Wardlaw, Paez, Rawlinson